**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MATTHEW P. MONTANO and
JULIET MONTANO,

    Plaintiffs,

vs.                                                             No. _____

BOARD OF TRUSTEES OF THE
SOUTHWEST MULTI-CRAFT HEALTH
AND WELFARE TRUST FUND, SOUTHWEST
SERVICE ADMINISTRATORS, INC.,
LOVELACE HEALTH SYSTEM, INC.,
and CONVERGENT REVENUE CYCLE
MANAGEMENT, INC.,

    Defendants.

**COMPLAINT FOR WRONGFUL DENIAL OF
GROUP HEALTH CARE BENEFITS UNDER THE
EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA)**

COME NOW Matthew P. Montano ("Mr. Montano" and Juliet Montano ("Mrs. Montano") (Mr. and Mrs. Montano are sometimes referred to herein as "Plaintiffs"), by and through their attorneys, Keleher & McLeod, P.A. (Kurt Wihl) and for their Complaint for Wrongful Denial of Group Health Care Benefits Under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§1001, et seq. and in particular 29 U.S.C. §1132, state:

**JURISDICTION AND VENUE**

1.     Plaintiff, Matthew P. Montano is a resident of Bernalillo County, New Mexico.

2.     Plaintiff, Juliet Montano is Matthew's wife and is a resident of Bernalillo County, New Mexico.

3.     Defendant, Board of Trustees of the Southwest Multi-Craft Health and Welfare Trust Fund ("Board of Trustees") is the governing body of the Southwest Multi-Craft Health and

Welfare Trust Fund ("the Group Plan") and is ultimately responsible for determination of claims submitted to the Group Plan. On information and belief, the Board of Trustees is located in, has a business office in and does business in Bernalillo County, New Mexico.

4. On information and belief, it is alleged that Defendant, Southwest Service Administrators, Inc. ("SWAI") is the administrator of the Group Plan and is located in, maintains an office in and does business in Bernalillo County, New Mexico.

5. On information and belief, it is alleged that Defendant, Lovelace Health System, Inc. ("Lovelace") is a foreign corporation doing business in Bernalillo County, New Mexico.

6. On information and belief, Convergent Revenue Cycle Management, Inc. ("Convergent") is a foreign corporation, which at relevant times acted on behalf of Lovelace to collect on claims for medical services rendered by Lovelace.

7. The Group Plan is a group medical, dental, safety incentive and death benefits plan subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). The Group Plan provides medical and in-patient dental surgical benefits through Blue Cross Blue Shield.

8. Mr. Montano is, and at all times material to this Complaint has been, a participant in the Group Plan, and Mr. Montano's family members, including but not limited to Mrs. Montano and their minor daughter Chloe Montano, are covered by the family benefits provided to Plaintiff by the Group Plan.

9. All events and conduct by defendants, which gave rise to this Complaint, occurred in this District.

10. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (Federal Claim) and ERISA, 29 U.S.C. §§1101, *et seq.*, including but not limited to 29

U.S.C. § 1132.

11. The Court has jurisdiction over the parties, as they are all residents of this District and/or doing business in this District.

## GENERAL ALLEGATIONS

12. Plaintiffs' minor child, Chloe Montano ("Chloe"), who was born on July 30, 2009, needed oral surgery to address decay on her primary teeth that had resulted in a diagnosis of early childhood caries (EEC) and facial swelling.

13. This condition, if left untreated, could lead to sepsis and even death. Due to her age and condition, Chloe's oral surgeon Tamera Coffman, DDS determined that the procedure needed to be performed quickly and on an in-patient basis under general anesthesia at Lovelace Westside Hospital.

14. Lovelace Westside Hospital was operated by Defendant Lovelace.

15. Mrs. Montano, as the child's mother, took primary responsibility for arranging medical care for Chloe to address the condition stated above.

16. Before taking Chloe to Lovelace Westside Hospital, Mrs. Montano was in contact with Lovelace to schedule the procedure and to confirm that the cost of the procedure would be covered under the family's medical or dental insurance under the Group Health Plan.

17. Lovelace assured Ms. Montano that the procedure was pre-approved and covered by the Group Plan. Plaintiffs reasonably relied on this assurance and elected to go forward with the surgery.

18. On September 15, 2015, a representative of Lovelace, or Convergent, again confirmed based on a review of the claim file that the procedure had been approved and should be covered.

19. On January 30, 2015, as part of the admission process at Lovelace Westside Hospital for Chloe, Lovelace provided to Mrs. Montano a document entitled "Consent to Treatment," which, among other things conveyed to Lovelace, to the fullest extent permitted by ERISA, authority and responsibility to act as Plaintiffs' "authorized representative" and thereby to act on Plaintiffs' behalf in making any claim for benefits under the Group Plan for care to be provided by Lovelace and to appeal any adverse determinations regarding coverage.

20. Mrs. Montano signed the Consent to Treatment form on January 30 2015.

21. Chloe had oral surgery on January 30, 2015 at Lovelace Westside Hospital, which was performed by Dr. Coffman with the anesthesia services provided by Anesthesia Specialists of Albuquerque ("ASA").

22. Dr. Coffman, Lovelace and ASA sent claims for payment for their services to Blue Cross Blue Shield shortly after the procedure was performed.

23. Plaintiffs received no invoices from Lovelace or explanation of benefits from the Group Plan pertaining to Chloe's surgery for several months. In December of 2015 (almost a year after Chloe's surgery), Mrs. Montano was contacted by Marcie Tighe of Convergent. Ms. Tighe stated that she was having difficulty processing the claim for Lovelace's bill for hospital services for Chloe's surgery and asked Mrs. Montano for a letter from Chloe's physician stating that it was medically necessary and that it needed to be performed on an in-patient basis.

24. On December 15, 2015, Duke City Pediatric Dentistry (Tamara Coffman, DDS's dental practice) sent by Facsimile Dr. Coffman's letter of April 17, 2015, stating that it had previously been provided to Lovelace in April of 2015.

25. Indeed, the April 17, 2015 medical necessity letter was faxed to Lovelace on April 17, 2015 at the request of Lovelace, because at or about that time, Lovelace stated that such a letter

was needed because the claim was being denied for lack of medical necessity.

26.     Thus, when Ms. Tighe stated in December of 2015 that she needed a letter showing medical necessity for the procedure in order to convince The Board of Trustees to cover the claim, Lovelace had already received such a letter approximately eight months earlier.

27.     The Group Plan paid for the surgery performed by Tamera Coffman, DDS and the anesthesia services performed by Anesthesia Specialists of Albuquerque ("ASA") during surgery. However, the Group Plan did not pay the claim for services rendered by Lovelace.  Later, in December of 2015 or January of 2016, the Group Plan rescinded its payment to ASA.  Payment for Dr. Coffman's services has not been rescinded.

28.     Shortly after Ms. Tighe's call to Mrs. Montano in December of 2015, Lovelace and Convergent stopped communicating with Mrs. Montano concerning the Lovelace and ASA bills. Neither Lovelace nor Convergent informed Plaintiffs of actions, if any, being taken to secure payment for the Lovelace and ASA bills.

29.     Apparently, at some point in December of 2015 or January of 2016, Marcie Tighe of Convergent submitted an appeal seeking payment of the Lovelace bill.  Ms. Tighe did not, indeed no one from Convergent or Lovelace did, inform Plaintiffs of this appeal.

30.     Not having heard anything further from Lovelace or Convergent, on May 20, 2016, Mrs. Montano sent a letter to the Board of Trustees appealing the Board of Trustee's decision to deny the Lovelace and ASA claims.  At this point, Plaintiffs still had not yet received a bill from Lovelace or ASA.

31.     On June 27, Defendant Southwest Service Administrators, Inc. ("SWAI") sent a letter to Mary Tighe of Convergent stating that the appeal to the Board of Trustees had been denied, stating that there had been a previous determination denying coverage, which they claimed had

5

been sent to Ms. Tighe on January 18, 2016. This alleged, but unseen appeal determination of January 18, 2016 purportedly referred to a previous appeal made by Ms. Tighe of Convergent.

32. Plaintiffs did not receive a copy of the January 18, 2016 letter, which SWAI and the Board of Trustees claimed had been sent to Ms. Tighe.

33. Plaintiffs did not receive a copy of the prior, undated appeal, letter or communication that Ms. Tighe of Convergent purportedly sent to SWAI and/or the Board of Trustees.

34. The letter of June 27, 2016 from SWAI and the Board of Trustees (this letter was copied to Mr. Montano) erroneously referred to the date of Chloe's surgery as May 19, 2015.

35. The letter of June 27, 2016 from SWAI and the Board of Trustees did not address, or even acknowledge receipt of, Mrs. Montano's letter of May 20, 2016.

36. Neither SWAI nor the Board of Trustees ever responded to Mrs. Montano's letter appeal of May 20, 2016.

37. On August 22, 2016, Lovelace sent Plaintiffs its first bill for hospital services related to Chloe's surgery of January 30, 2015. That bill stated that total hospital charges were $22, 246.00, that Plaintiffs had paid $250 (their deductible under the Group Plan) and that $21,996.00 was still due and owing.

38. On October 24, 2016, Plaintiffs received the first bill from ASA. That bill said that the total charge for anesthesia services was $1,456.00 but due to a previous payment of $396.00 by Plaintiffs, $1,060.00 was still due and owing.

39. On December 13, 2016, having received bills from Lovelace, but no communication from Lovelace, Convergent, SWAI or the Board of Trustees, Mrs. Montano sent a second appeal to the Board of Trustees. In this appeal, Plaintiffs explained the need for the

surgery and enclosed the appeal of May 20, 2016 (which had not been answered), Dr. Coffman's April 17, 2015 medical necessity letter and copies of the Lovelace and ASA medical bills.

40. On January 4, 2017, SWAI sent Mrs. Montano a letter stating that the Board of Trustees had reviewed her December 13, 2016 appeal but that it too was denied.

41. The January 4, 2017 letter stated that the Board of Trustees had denied a previous appeal on June 21, 2016, that the Board of Trustees had communicated that denial by letter of June 27, 2016 to Mr. Montano and that Plaintiffs' December 13, 2016 letter was sent more than 180 days after the June 27, 2016 letter had been sent to Mr. Montano.

42. In fact, Plaintiffs' letter of December 13, 2016 letter was sent 169 days following the June 27, 2015 letter.

43. The January 4, 2017 letter from SWAI and the Board of Trustees again erroneously referred to the date of Chloe's surgery as May 19, 2015.

44. The January 4, 2017 letter did not attach a copy of SWAI and/or the Board of Trustees alleged determination of January 18, 2016.

45. The January 4, 2017 letter from SWAI and the Board of Trustees stated, for the first time, that the services provided were not covered under either the Dental or the Medical plans.

46. In the January 4, 2017 letter, SWAI and the Board of Trustees stated that the claim had not been denied "due to lack of information or medical necessity."

47. Significantly, on November 1, 2016 the Group Plan sent a notice to all participants and their dependents that it was "clarifying" coverage for facility fees related to dental services.

48. In the November 1, 2016 notice the Group Plan stated:

> "It happens from time to time that a person needing dental services cannot safely receive those services in the dentist's office, and must go to a hospital or outpatient surgery center to obtain the necessary dental services. Our medical plan has been clarified to indicate that

7

>under certain circumstances the Medical plan will provide benefits for the facility fees and anesthesia associated with Medically Necessary dental services covered by a Dental Plan, if the Plan determines that dental services cannot be safely administered in the dentist's office and hospitalization or outpatient surgery facility care is Medically Necessary to safeguard the health of the patient during performance of the dental services."

49. At the time of Chloe's surgery, Plaintiffs and Chloe were covered by the Dental Plan.

50. At the time of Chloe's surgery, Chloe's condition was a covered condition under the Dental Plan.

51. At the time of Chloe's surgery, it was deemed medically necessary for Chloe to have the dental procedure and to have the procedure performed at a hospital rather than a dentist's office in order to safeguard Chloe's health.

52. At the time of time of Chloe's surgery, services were provided by a hospital facility and anesthesia services were provided in connection with the surgery.

53. By definition, the November 1, 2016 "clarification" of coverage is not a change or addition to coverage. It is a clarification.

54. There were no changes, additions, or deletions of coverage under the Group Plan between the date of Chloe's surgery and November 1, 2016.

55. Accordingly, coverage under the Group Plan, which was *clarified* by SWAI and the Board of Trustees (and set forth in full in Paragraph 48, above) must have been present at the time of Chloe's surgery on January 30, 2015.

56. Coverage for Chloe's surgery and anesthesia was not denied for lack of medical necessity or lack of medical information submitted to the Group Plan.

57. Lovelace, acting through its collection agency, Medical Revenue Service a/k/a Medical Data Systems, Inc. is pursuing collection actions against Plaintiffs to collect on the Lovelace medical bill.

58. Plaintiffs have exhausted their remedies under the Group Plan and have been advised that they may proceed to litigation to pursue their rights.

## COUNT I

## AGAINST LOVELACE FOR BREACH OF FIDUCIARY DUTY

59. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 58 above as though fully set forth herein.

60. Lovelace assured Plaintiffs that the surgery and anesthesia services associated therewith had been pre-approved by the Group Plan before surgery was performed.

61. Plaintiffs reasonably relied on those assurances to their detriment.

62. Lovelace reconfirmed that it had obtained pre-approval of the surgery from the Group Plan.

63. Plaintiffs again reasonably relied on those assurances to their detriment.

64. Lovelace obtained Plaintiffs' consent to act as their agent to process the claim for payment of the hospital and anesthesia services provided on January 30, 2015.

65. In obtaining Plaintiffs' consent to act as their agent, Lovelace assumed a duty to act reasonably and diligently to obtain payment for the services rendered.

66. Lovelace breached its duty to Plaintiffs by failing to do one or more of the following:

   a. Provide necessary information to Blue Cross Blue Shield or the Group Plan demonstrating the medical necessity of the procedure in hospital;

    b. Keep track of information provided by Plaintiffs and Chloe's oral surgeon concerning the medical necessity for the procedure;

    c. Timely appeal an adverse determination of coverage under the Group Plan;

    d. Timely communicate with Plaintiffs concerning problems with obtaining insurance coverage for the hospital and anesthesia services;

    e. Timely communicate with Plaintiffs concerning the adverse determination on the appeal; and/or

    f. File a second appeal to the Group Plan's adverse determination.

67. Despite its breach of its duties, Lovelace has referred Plaintiffs' account to collections.

68. As a result of Lovelace's breach of its duties, Plaintiffs have been damaged in an amount to be proved at trial by being forced to pay what should have been an insurance covered claim, and by having the claim sent to collections, thereby damaging their credit rating.

## COUNT II

### AGAINST CONVERGENT FOR BREACH OF FIDUCIARY DUTY

69. Plaintiffs incorporate by this reference the allegations contained in Paragraphs 1 through 68 above as though fully set forth herein.

70. On information and belief, it is alleged that Convergent assumed the responsibilities of Lovelace arising out of Plaintiffs conveying to Lovelace rights and responsibilities as their agent for the purpose of securing payment for the hospital and anesthesia services provided to Chloe and thereby became obligated to perform those duties reasonably and diligently.

71. Convergent breached those duties by failing to perform one or more of the following:

    a. Provide necessary information to Blue Cross Blue Shield or the Group Plan demonstrating the medical necessity of the procedure in hospital;

    b. Keep track of information provided by Plaintiffs and Chloe's oral surgeon concerning the medical necessity for the procedure;

    c. Timely appeal an adverse determination of coverage under the Group Plan;

    d. Timely communicate with Plaintiffs concerning problems with obtaining insurance coverage for the hospital and anesthesia services;

    e. Timely communicate with Plaintiffs concerning the adverse determination on the appeal; and/or

    f. File a second appeal to the Group Plan's adverse determination.

72. As a result of Convergent's breach of its duties, Plaintiffs have been damaged in an amount to be proved at trial by being forced to pay what should have been an insurance covered claim, and by having the claim sent to collections, thereby damaging their credit rating.

## COUNT III

### AGAINST THE BOARD OF TRUSTEES AND SWAI
### FOR REDETERMINATION OF BENEFITS AND BREACH OF FIDUCIARY DUTY

73. Plaintiffs incorporate by this reference the allegations contained in Paragraphs 1 through 58 above as though fully set forth herein.

74. The Board of Trustees and SWAI had the duty to make a reasonable determination of whether there was coverage for Chloe's surgical procedure in hospital and for related anesthesia services.

75. Under the terms of the Group Plan, and as clarified by the November 1, 2016 notice to Participants and Dependents under the Group Plan, Chloe's in-hospital surgery and related anesthesia should have been covered as Dental Procedures under the Medical plan.

11

76. The Board of Trustees and SWAI arbitrarily, capriciously, unreasonably and negligently determined that hospital and anesthesia charges for Chloe's medical care were not covered thereby breaching their duties as administrators and trustees of the Group Plan.

77. Contrary to requirements imposed on the Board of Trustees and SWAI, their notification of January 4, 2017 did not state the provisions in the Group Plan that supported their determination that the hospital and anesthesia charges for Chloe's care were not covered under the Group Plan.

78. The Board of Trustees and SWAI had a fiduciary duty to timely inform Plaintiffs of their determination that the claim for payment of Chloe's hospital and anesthesia services was denied.

79. The Board of Trustees and SWAI failed to timely inform Plaintiffs of their denial of the claims for hospital and anesthesia charges.

80. The Board of Trustees and SWAI had a fiduciary duty to timely inform Plaintiffs of the denial of the appeal of the adverse coverage determination.

81. The Board of Trustees and SWAI failed to timely notify Plaintiffs of the Board of Trustee's and SWAI's denial of an appeal presented by Convergent at the end of 2015 or in January of 2016.

82. The Board of Trustees and SWAI arbitrarily, capriciously and negligently determined that Plaintiffs' second appeal of December 13, 2016 was time-barred when, in fact, that appeal was made less than 180 days (the ERISA prescribed period for an appeal).

83. The Board of Trustees and SWAI made a determination concerning a claim that did not exist, specifically a procedure performed on May 19, 2015 when, in fact, Chloe's surgery was

performed on January 30, 2015.  Accordingly, any determination that the January 30, 2015 hospital and anesthesia charges are not covered under the Group Plan was arbitrary and capricious.

84. In making the adverse coverage determinations of June 27, 2015 and December 4, 2017, the Board of Trustees and SWAI impermissibly deferred to prior adverse determinations of no coverage rather than taking a fresh look at the facts and circumstances presented by the appeals in breach of their fiduciary duty.

85. Plaintiffs have been damaged by the ERISA prohibited conduct set forth above in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment in their favor and against:

Defendants Lovelace and Convergent awarding compensatory damages in an amount to be proved at trial, their attorneys' fees for bringing this action, their costs of suit, pre-judgment and post-judgment interest and such other and further relief as the Court deems just and proper;

Directing Defendants, the Board of Trustees and SWAI to determine that hospital and anesthesia charges incurred for Chloe Montano are covered benefits and to pay those benefits along with Plaintiffs' attorneys' fees for bringing this action, their costs of suit and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**KELEHER & McLEOD, P.A.**

By: _____*/s/ Kurt Wihl*_____
Kurt Wihl
P. O. Box AA
Albuquerque, New Mexico  87103
(505) 346-4646
Albuquerque, NM  87103
kw@keleher-law.com
*Attorneys for Plaintiffs*

4821-6026-2490, v. 1